IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| ROBERT E. DENK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05-4083-CV-C-NKL |
| | ) | |
| JO ANNE BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Pending before the Court is Plaintiff Robert E. Denk's ("Denk") Motion for Summary Judgment [Doc. # 8]. Denk seeks judicial review of the Commissioner's denial of his request for disability benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* Because the ALJ's decision was not supported by substantial evidence in the record as a whole, the ALJ's decision will be reversed and benefits will be granted.

**I.     Background**

Denk alleged an onset date of July 4, 2002, wherein he alleged disabling impairments of chronic lower back pain. Denk was 51 years old on his alleged onset date.

    **A.     Denk's Back Injuries and Treatment History**

Denk's lower back was initially injured in March 1972. He was diagnosed with an

1

acute lumbosacral strain with traumatic sciatic neuritis into his left leg.  A few months later in the summer of 1972, Denk underwent surgery, consisting of a partial hemi-laminectomy with exploration of the nerve root at the S-1 and S-2 interspace with fusion of the L6 to the Sacrum.  Denk continued to have pain after his surgery and he was released back to work in January 1973.  Denk began working for NAPA Auto Parts.

In February 1992, Denk re-injured his lower back while working at the Auto Parts store.  Denk treated with Dr. Michalow, an orthopaedic surgeon.  Dr. Michalow diagnosed Denk with lumbosacral strain and traumatic sciatic neuritis, but he did not schedule surgery for Denk.  In October 1993, Dr. Michalow released Denk back to work, but noted that he should change occupations.

Denk discontinued working for NAPA Auto Parts at this time and he relocated to the Lake of the Ozarks.  Denk began working for O'Reilly Auto Parts and he injured his lower back again in the spring of 2002.  Denk began treating with Dr. Kathleen Robbins, whom the ALJ considered to be Denk's treating physician.

### 1. *Dr. Robbins*

Dr. Robbins treated Denk for the first time in May 2002.  At that time, she recommended that Denk work only light duty.  Subsequently, in July 2002, Dr. Robbins ordered that Denk discontinue working because of his intense back pain.  Dr. Robbins filled out a "Certification of Health Care Provider" which indicated that Denk was temporarily, totally disabled.  Dr. Robbins ordered an MRI of Denk.

MRI imaging was done on July 18, 2002.  The MRI showed mild disc bulging at

2

multiple levels, with moderate foraminal encroachment.

Dr. Robbins referred Denk to Dr. Curtis Cox for a neurological consultation. Dr. Cox did not believe Denk was a candidate for surgery, but he did believe Denk should receive epidural injections for his pain. Dr. Cox believed that Denk's pain could be managed through epidural injections and his examination of Denk revealed that his musculoskeletal system was "totally" within normal limits. Dr. Cox also noted that Denk had 100 percent full range of motion in all joints. Denk received two epidural steroid injections.

In the summer of 2002, Dr. Robbins wrote a letter indicating that Denk's pain "has been increasingly more difficult to control, at times preventing him from even getting out of bed. He currently has trouble performing basic activities of daily living, so returning to work would be out of the question. I do expect that this condition will preclude [Denk] from gainful employment for at least the next 12 months." (Tr. 116.)

In July 2003, Dr. Robbins wrote a similar letter stating that Denk had received two epidural injections during the previous month, but that they had not helped his back pain. She also advised that Denk "[was] currently unable to work due to his disabilities and his condition is unlikely to improve within the next twelve months." (Tr. 145.)

In December 2003, Dr. Robbins submitted a Residual Functional Capacity ("RFC") form. Dr. Robbins advised that Denk could lift five pounds frequently and lift only ten pounds occasionally. She further stated that Denk could stand for one hour, he could sit for two hours, and he could sit/stand for three hours during an eight-hour work

3

day. Dr. Robbins advised that Denk could never climb, balance, stoop, crouch, or bend. However, she stated that he could frequently handle, finger, and feel under the bilateral categories on the form. Denk could occasionally reach and occasionally kneel. (Tr. 148-49.)

### 2. *Dr. Mead*

Dr. Alan Mead, who worked at Pain Management at Lake of the Ozarks, was responsible for giving Denk his epidural injections. In March 2004, Dr. Mead filled out a Medical Source Statement ("MSS") wherein he identified that Denk could frequently lift five pounds and occasionally lift ten pounds. Dr. Mead stated that Denk could stand, sit, or stand/sit for no more than one hour in an eight-hour workday. Finally, Dr. Mead advised that Denk could occasionally climb, balance, stoop, kneel, crouch, and bend and that he could frequently handle, finger, and feel items under the bilateral categories. (Tr. 192-93.)

### 3. *Dr. Dexter*

Dr. James Dexter was a neurologist who also treated Denk and he filled out a MSS in February 2004. Dr. Dexter advised that Denk could frequently lift ten pounds and occasionally lift twenty-five pounds. In an eight-hour workday, Dr. Dexter advised that Denk could stand for three hours, sit for four hours, and sit/stand for four hours. Like Dr. Robbins, Dr. Dexter stated that Denk could never climb, balance, stoop, crouch, or bend. He stated Denk could occasionally kneel and reach, and that he could frequently handle, finger, and feel items. (Tr. 188-89.)

4

### 4. *Dr. Wy*

In September 2002, Denk consulted with Dr. John Wy, an internist who performed a consultative physical examination. Dr. Wy noted that Denk had no difficulty removing his shoes and socks. Dr. Wy observed no spinal tenderness, but he did note paralumbar muscle spasms bilaterally. Dr. Wy observed Denk's MRI results from July 2002 and opined that they showed "minimal" and "mild" findings. Dr. Wy opined that Denk had chronic low back pain with some sensory deficit in the left lower extremity. Dr. Wy did not submit an MSS nor an RFC assessment.

### B. The Hearing

The ALJ conducted a hearing on Denk's claim on February 4, 2004. Denk testified that his pain was disabling in that he had difficulty getting dressed and using the bathroom. He also stated that he sometimes used a cane and that he frequently had to lay down during the day due to increased pain. Denk also testified he could not sit for more than one hour. Regarding his daily activities, Denk testified that he spent his days watching television, listening to the radio, and assisting his wife with the cleaning. He stated that he did the cooking, but that his wife washed dishes and vacuumed the house. Denk testified that he did some shopping, helped with the laundry, and traveled to the post office most days to pick up the mail. Denk testified that he abandoned his hobbies of golf and fishing because of his back pain.

### C. The ALJ's Decision

The ALJ issued his decision on September 22, 2004. In his opinion, the ALJ

determined that Denk's credibility was impaired because it was not supported by the medical evidence in the record. Specifically, the ALJ discredited Dr. Mead's findings, which were consistent with Dr. Robbins's. Instead, the ALJ relied on Dr. Cox's findings. The ALJ determined that Dr. Cox's opinion should be given more weight because he is a specialist in neurological medicine and the MRI findings from July 2002 were, according to the opinion of the ALJ, more consistent with Dr. Cox's opinion.[1]

The ALJ also noted Denk's relatively conservative treatment for his pain. Denk did not have any surgery since 1972 and he was not referred to any pain clinic or physical therapy,[2] other than receiving his epidural injections. Finally, the ALJ noted that Denk did not have most of the signs typically associated with chronic lower back pain, including muscle atrophy, abnormal MRI or other diagnostic tests, or an impaired ability to ambulate.

Nonetheless, the ALJ determined that Denk's impairments were severe and found Denk was disabled as of February 5, 2004, one day after the hearing. The ALJ acknowledged Denk's impairments were a "borderline situation" and that his condition had worsened between the time that Dr. Robbins evaluated him and Dr. Dexter evaluated

---

[1] The ALJ opined, "[Denk]'s MRI's do not show the kind of degree of disc protusion that should be expected to cause totally disabling pain, an opinion apparently shared by Dr. Cox, at least implicitly." (Tr. 18.)

[2] This is not entirely accurate. Dr. Cox, the physician whose opinion was given controlling weight by the ALJ, recommended physical therapy for Denk. (Tr. 16, 181.)

6

him.[3]  (Tr. 20.)

Thus, the narrow issue before the Court is whether the ALJ's determination that Denk was not disabled between July 4, 2002--his alleged onset date--and February 5, 2004, is supported by substantial evidence in the record.  The Court finds that it is not and reverses the ALJ's determination.

**II.     Discussion**

The ALJ's decision to discredit Dr. Robbins in favor of Dr. Cox is not supported by substantial evidence in the record.  Dr. Robbins treated Denk over the course of several appointments, while Dr. Cox consulted with Denk only once.  In addition to the disparate number of consultations, it appears that the ALJ relied on his own opinion that Denk's MRI results were more consistent with Dr. Cox's evaluation than with Dr. Robbins's as a basis for discounting Dr. Robbins's evaluation.  It is not permissible for the ALJ to make independent evaluations of the medical evidence.  Finally, the ALJ conceded that Dr. Robbins's assessment was not necessarily unfounded or incorrect; instead the ALJ merely categorized it as "premature."

Dr. Robbins's opinion is further bolstered by the consistent evaluations opined by Dr. Mead.  The ALJ discounted Dr. Mead's opinion because he was not a "treating physician" and because Dr. Mead's opinion came so late in the treatment process.  Nonetheless, Dr. Mead's consistent evaluations of Denk further bolster Dr. Robbins's

---

[3]The ALJ speculated that Dr. Robbins's assessment of Denk "may have been accurate after all, just premature."  (Tr. 20.)

7

Case 2:05-cv-04083-NKL   Document 13   Filed 11/08/05   Page 7 of 9

assessment of Denk and his limited capabilities.

Regarding Denk's credibility, the ALJ's determination is also not supported by substantial evidence in the record. It appears the ALJ has latched on to portions of Denk's testimony to find that Denk's daily activities do not support his claims of disabling pain. While it's true that Denk participates in limited activities at his home, it is also true that he has abandoned his hobbies because of his pain and that his role in household chores was limited and usually performed in conjunction with his wife. Combined with his "excellent" work history--a term used by the ALJ in his opinion--and his doctors' beliefs that his pain was sufficient enough to warrant epidural injections, there is no basis for finding that Denk is not credible. Simply put, there is no evidence that Denk is wrongfully seeking benefits, nor is there any evidence that he is exaggerating the effects of his back injuries.

Finally, the ALJ justified granting Denk benefits in February 2004 because his condition had somehow worsened between Dr. Robbins's assessment of him and Dr. Dexter's assessment. The ALJ does not explain Denk's alleged deterioration during this time. In fact, the ALJ ignores that Dr. Dexter determined that Denk could lift *more* than the amount that Dr. Robbins assessed. Also, Dr. Dexter opined that Denk could sit and stand for longer periods during the day. Comparing the two evaluations from the doctors, it would seem to appear that Denk *improved* by the time Dr. Dexter evaluated him, thereby undermining the ALJ's assertion that Denk was in good shape in July 2002.

Given the clear statements offered by Dr. Robbins, who was Denk's treating

8

physician, Denk's excellent work history, and the ALJ's own acknowledgment that this is a "borderline" case, the Court finds that the ALJ's decision to deny benefits from July 4, 2002 to February 5, 2004, is not supported by substantial evidence in the record. Accordingly, the Court will reverse and grant benefits.

## III. Conclusion

Accordingly, it is hereby

ORDERED that Denk's Motion for Summary Judgment [Doc. # 8] is GRANTED. The decision of the ALJ is REVERSED, and the Commissioner is ordered to pay benefits as of July 4, 2002.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

DATE: November 8, 2005
Jefferson City, Missouri